FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 24, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

GEOFFREY WILLIAM H.,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

No.  4:18-CV-05151-RHW

**ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 12, 14. Plaintiff brings this action seeking judicial review pursuant to 42 U.S.C. § 405(g) of the Commissioner of Social Security's final decision, which denied his application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 401-434. *See* Administrative Record (AR) at 1-6, 12-28. After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set forth below, the Court **GRANTS**

Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## I.    Jurisdiction

Plaintiff filed his application for Disability Insurance Benefits on January 15, 2015. *See* AR 15, 218-19. His alleged onset date of disability was August 1, 2013. AR 218. Plaintiff's application was initially denied on May 8, 2015, *see* AR 107-113, and on reconsideration on July 17, 2015. *See* AR 115-120. On July 31, 2015, Plaintiff filed a request for a hearing. AR 121-22.

A hearing with Administrative Law Judge ("ALJ") Marie Palachuk occurred on August 9, 2017. AR 39, 41. On November 16, 2017, the ALJ issued a decision concluding that Plaintiff was not disabled as defined in the Act and was therefore ineligible for disability benefits. AR 12-28. On August 10, 2018, the Appeals Council denied Plaintiff's request for review, AR 1-6, thus making the ALJ's ruling the final decision of the Commissioner. *See* 20 C.F.R. § 404.981.

On September 11, 2018, Plaintiff timely filed the present action challenging the denial of benefits. ECF No. 1. Accordingly, Plaintiff's claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

## II.    Five-Step Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A). A claimant shall be determined to be under a disability only if the claimant's impairments are so severe that the claimant is not only unable to do his or her previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520(a)(4); *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(b). Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit. 20 C.F.R. § 404.1572. If the claimant is engaged in substantial activity, he or she is not entitled to disability benefits. 20 C.F.R. § 404.1571. If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). A severe impairment is one that has lasted or is expected to last for at least twelve months, and must be proven by

objective medical evidence. 20 C.F.R. § 404.1508-09. If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied and no further evaluative steps are required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether one of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c). To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists

in "significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 676 F.3d 1203, 1206 (9th Cir. 2012).

## III. Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under this section is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Even if the evidence in the record is susceptible to more than one rational interpretation, if inferences reasonably drawn from the record support the ALJ's decision, then the court must uphold that decision. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954-59 (9th Cir. 2002).

## IV. Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings and only briefly summarized here. Plaintiff was 36 years old on the alleged date of onset, which the regulations define as a younger person. AR 26, 75; *see* 20 C.F.R.

§ 404.1563(c). He obtained his GED and, at the time of the hearing, was enrolled in a nuclear technology, non-licensed operator program at Columbia Basin College. AR 53, 240, 1243, 1245. He can read, write, and communicate in English. AR 26, 238. He has a history of opioid abuse. AR 1012. He has past relevant work as an irrigation system maintenance person, automotive equipment servicer, automobile mechanic supervisor, and nuclear chemical operator. AR 26, 60-64, 240.

## V.    The ALJ's Findings

The ALJ determined that Plaintiff was not under a disability within the meaning of the Act at any time from August 1, 2013 (the alleged onset date) through November 16, 2017 (the date the ALJ issued her decision). AR 16, 27-28.

**At step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date (citing 20 C.F.R. § 404.1571 *et seq.*). AR 17.

**At step two**, the ALJ found that Plaintiff had the following severe impairments: obesity, degenerative disc disease of the lumbar and cervical spine, status post cervical fusion, status post lumbar laminectomy, obstructive sleep apnea, depressive disorder, anxiety disorder, somatoform symptom disorder, and narcotic analgesic use disorder (citing 20 C.F.R. § 404.1520(c)). AR 17.

**At step three**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, Appendix 1. AR 19.

**At step four**, the ALJ found that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b). AR 20. With respect to Plaintiff's physical abilities, the ALJ found that Plaintiff could stand, sit, and walk up to six hours each in a workday, but could only do each for up to one hour at a time. AR 20. To accommodate this limitation, Plaintiff would need to have the option to alternate between sitting and standing every 60 minutes. AR 20. Plaintiff could perform all other postural activities occasionally. AR 20. The ALJ also found that Plaintiff could frequently reach, handle, and finger with his left arm, but could only reach overhead occasionally. AR 20. He could never kneel or crawl and could not be exposed to concentrated noise, vibration, respiratory irritants, or hazards. AR 20.

With respect to Plaintiff's mental abilities, the ALJ found that Plaintiff was able to understand, remember, and carry out simple, routine tasks and semi-skilled tasks for two-hour intervals between regularly scheduled breaks. AR 20-21. The ALJ also found that Plaintiff must work in a predictable environment with no fast-paced production rates. AR 21. He was limited to only superficial interaction with

the public. AR 21. Given these physical and psychological limitations, the ALJ found that Plaintiff was unable to perform any past relevant work. AR 26.

**At step five**, the ALJ found that in light of Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that he could perform (citing 20 C.F.R. § 404.1569). AR 27. These included a small parts assembler, mail clerk, and collator operator. AR 27.

## VI.    Issues for Review

Plaintiff argues that the ALJ: (1) improperly discredited his subjective pain complaint testimony; (2) improperly evaluated and weighed the medical opinion evidence; (3) failed to include muscle contraction headache syndrome as a severe impairment at step two of the sequential evaluation process; and (4) improperly found that there were a significant number of jobs in the national economy that he could still perform. ECF No. 12 at 3-4, 6-20.

## VII.    Discussion

**A.    The ALJ did not Improperly Reject Plaintiff's Subjective Complaints**

Plaintiff argues the ALJ erred by discounting the credibility of his testimony regarding his subjective symptoms. ECF No. 12 at 6-8. Specifically, he argues that the ALJ failed to make specific findings as to the reasons why she discounted his

credibility. *Id.* at 7. He also argues that the ALJ erred in discounting his testimony on the basis that it was inconsistent with the medical evidence. *Id.* at 7-8.

Once a claimant produces objective medical evidence of an underlying impairment that could reasonably produce some degree of the symptoms alleged, the ALJ can reject the claimant's symptom testimony only by providing "specific, clear, and convincing reasons." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). And here, the ALJ provided multiple clear and convincing reasons for discrediting Plaintiff's subjective complaint testimony. *See* AR 22. The ALJ found that Plaintiff's complaints of disabling limitations were: (1) belied by his daily activities; (2) not fully consistent with the objective medical evidence; and (3) undermined by his positive responses to surgery. *See* AR 22. These were all appropriate bases for discounting his pain testimony. *See Molina*, 674 F.3d at 1113 (activities inconsistent with alleged symptoms are proper grounds for questioning credibility); *Rollins*, 261 F.3d at 857 (same); 20 C.F.R. § 404.1529(c)(3)(i) (same); *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (ALJ may discount claimant's testimony when it is inconsistent with the medical evidence); *Tommasetti*, 533 F.3d at 1040 (favorable responses to treatment can undermine claimant's complaints of debilitating pain); 20 C.F.R. § 404.1529(c)(3)(v) (same).

///

In his opening brief, Plaintiff only addresses one of the ALJ's three rationales—that his testimony was not fully consistent with the objective medical evidence.[1] *See* ECF No. 12 at 7-8. By not addressing all of the ALJ's rationales in his opening brief, Plaintiff has waived his challenge to the ALJ's consideration of his subjective pain testimony. *See Carmickle*, 533 F.3d at 1161 n.2; *Matthew S. v. Saul*, 4:18-CV-05115-RHW, ECF. No 16 at 12-15 (E.D. Wash. 2019); *Debra S. v. Saul*, No. 2:19-CV-00131-MKD, 2019 WL 6828384, at *5 (E.D. Wash. 2019).

Plaintiff also argues that the ALJ failed to make "specific findings" as to the reasons why she discounted his credibility. ECF No. 12 at 7. The record demonstrates otherwise. The ALJ relied on the three rationales outlined above and supported those rationales with numerous specific examples accompanied by citations to the record. *See* AR 22. Plaintiff's contention that the ALJ's decision is unsupported by specific findings lacks merit.

///

---

[1] And even to the extent that Plaintiff challenges this rationale in his opening brief, his argument does not address the ALJ's actual reasoning. The ALJ discounted Plaintiff's testimony because his allegations about his *back* symptoms were contradicted by his negative straight leg raise tests, his mild to moderate MRI results, and his generally normal physical examination findings. *See* AR 22. Plaintiff argues, however, that his testimony about his debilitating *headaches* was consistent with how he described his headache symptoms to his providers. ECF No. 12 at 7-8. Even assuming this is correct, it does not establish that the ALJ's reasoning was wrong.

In his reply brief, Plaintiff cites two MRI studies that are at least relevant to the ALJ's actual reasoning. *See* ECF No. 15 at 2. However, neither undermines the ALJ's conclusion, given that (1) the first MRI only revealed mild abnormalities and (2) the second MRI was taken prior to Plaintiff's cervical fusion, which resulted in "marked improvement" in his neck symptoms. AR 419, 422, 1146, 1243.

**B.    The ALJ did not Err in Weighing the Medical Opinion Evidence**

Plaintiff argues that the ALJ erred in evaluating and weighing the medical opinion evidence from four providers: (1) examining psychiatrist Gregory Sawyer, M.D., Ph.D.; (2) examining psychiatrist Ronald Early, M.D., Ph.D.; (3) treating spinal surgeon Janmeet Sahota, D.O.; and (4) treating nurse practitioner Desiree Ang. ECF No. 12 at 8-12.

**1.    Legal standards**

Title II's implementing regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (non-examining physicians). *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001); *see* 20 C.F.R. § 404.1527(c)(1)-(2). If a treating or examining doctor's opinion is contradicted by another doctor's opinion—as is the case here—an ALJ may only reject it by providing "specific and legitimate reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ satisfies the "specific and legitimate" standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his [or her] interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). In contrast, an ALJ fails to satisfy the standard when he

or she "rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his [or her] conclusion." *Id.* at 1012-13.

### 2. Examining psychiatrist Gregory Sawyer, M.D., Ph.D.

Dr. Sawyer evaluated Plaintiff in April 2015. AR 570-577. He diagnosed Plaintiff with major depressive disorder in partial remission. AR 576. He generally opined that Plaintiff's condition would not restrict his ability to work and that Plaintiff would not have difficulty completing a normal workweek. AR 576-77. He did note, however, that Plaintiff would have some difficulty understanding and carrying out complex instructions, sustaining concentration and persistence, and dealing with stress. AR 576-77.

The ALJ assigned partial weight to Dr. Sawyer's assessment, reasoning that his opined functional limitations were somewhat internally inconsistent and that his objective test results did not reveal significant limitations. AR 23. Plaintiff argues that the ALJ should have assigned more weight to Dr. Sawyer's opinion because it was corroborated by Dr. Early as well as by two state agency psychological consultants. ECF No. 12 at 12. However, the ALJ did not discount Dr. Sawyer's opinion because it was uncorroborated—she discounted it because of internal inconsistencies and the fact that it was not supported by Dr. Sawyer's own

examination findings. *See* AR 23. By not addressing either of the ALJ's actual rationales, Plaintiff has waived his challenge to the ALJ's consideration of Dr. Sawyer's opinion. *See Carmickle*, 533 at 1161 n.2; *Matthew S.*, 4:18-CV-05115-RHW, ECF. No 16 at 12-15; *Debra S.*, 2019 WL 6828384, at *9.

### 3. Examining psychiatrist Ronald Early, M.D., Ph.D.

Dr. Early evaluated Plaintiff twice: first in December 2015, then again in March 2017. *See* AR 1075-1088, 1265-1276. In both assessments, Dr. Early diagnosed Plaintiff with unspecified depressive disorder, somatic symptom disorder, and unspecified anxiety disorder. AR 1084, 1275. In the December 2015 evaluation, Dr. Early opined that Plaintiff's psychological symptoms caused him mostly moderate limitations in his ability to perform work activities, but also a few mild limitations, a few marked limitations, and a few areas where he had no limitations at all. AR 1085-87. In March 2017, Dr. Early opined that Plaintiff's mental conditions were at maximum medical improvement and that he had a Category Three permanent partial mental health impairment. AR 1276; *see* WAC 296-20-340(3). However, Dr. Early also believed that Plaintiff could "overcome" his depressive disorder and could attend school, but could not perform any work "within the limitations of his work history." AR 1275-76. Dr. Early did not provide any specific functional limitations with this evaluation. *See* AR 1276.

The ALJ gave little weight to Dr. Early's assessments, reasoning that (1) his opinion was directly contradicted by multiple other medical opinions, and (2) his examination findings did not support his ultimate conclusions, which he had apparently derived instead from other medical records and Plaintiff's self-reports. *See* AR 24. These were both proper bases for discounting his opinion. *See Tommasetti*, 533 F.3d at 1041; *Debra S.*, 2019 WL 6828384, at *9.

Plaintiff argues that the ALJ's first rationale was error because, while Dr. Early's opinion may have been contradicted by multiple medical opinions, it was also corroborated by multiple opinions, including Dr. Sawyer's and the two state agency psychologists'. However, only small aspects of these three providers' opinions corroborated Dr. Early's opinion—a few of their functional limitations were similar, but all three ultimately believed that Plaintiff was able to work. *Compare* AR 84, 100-01, 576-77, *with* AR 1085-87. And in any event, even if they had entirely corroborated Dr. Early's opinion, many other psychologists still contradicted it, *see* AR 49-50, 1005-13, 1231-40, so this was still a valid basis for discounting his opinion.

With respect to the ALJ's second rationale, Plaintiff believes that the ALJ's reason for discounting Dr. Early's opinion was that Dr. Early never actually examined him, but simply reviewed the records and gave an opinion based on the record review. ECF No. 12 at 10-11. This argument mischaracterizes the ALJ's

reasoning. The ALJ was aware that Dr. Early examined Plaintiff on multiple

occasions, but found that the findings from his mental status examinations did not

support his ultimate conclusions—which Plaintiff does not address.

### 4. Treating orthopedist Janmeet Sahota, D.O.

Dr. Sahota was Plaintiff's treating spine surgeon from July 2013 to March

2016. AR 1091, 1162-63. He performed a lumbar surgery on Plaintiff in September

2013 and a cervical fusion in August 2015. AR 964-65, 1115-16. In July 2015—

one month before Plaintiff's cervical fusion—Dr. Sahota opined that Plaintiff

could not work that month[2] and provided a significantly restrictive functional

capacity, particularly in postural activities. AR 1063. In October 2015, Dr. Sahota

noted that the surgery had "markedly improved" Plaintiff's cervical condition. AR

1120. In January 2016, Dr. Sahota again opined that Plaintiff could not work that

month, but provided a less restrictive functional capacity. AR 1161. By March

2016, Dr. Sahota believed that Plaintiff had reached maximum medical

improvement and could return to work full time. AR 1123, 1198-99, 1216-17. He

did not believe Plaintiff could do his past job as a mechanic, but believed Plaintiff

could do the alternate job of automobile repair service estimator. AR 1211-17. The

ALJ assigned significant weight to Dr. Sahota's opinion, reasoning that it was

---

[2] Plaintiff erroneously states that Dr. Sahota "continued these restrictions through November 1, 2015." ECF No. 12 at 12. However, this opinion applied to the period of July 2015 to August 2015. *See* AR 1063.

consistent with the medical record as well as Plaintiff's course of treatment, recovery, physical examinations, and daily activities. AR 24.

Plaintiff argues the ALJ improperly focused on Dr. Sahota's March 2016 opinion and did not assign a specific weight to each update that Dr. Sahota provided after Plaintiff's monthly appointments. *See* ECF No. 12 at 12. However, Plaintiff does not cite nor has the Court located any authority requiring an ALJ to assign weight to every individual monthly opinion from a medical provider. Here, the ALJ focused on Dr. Sahota's March 2016 opinion because that was the point at which Plaintiff had recovered from his neck surgery, was at maximum medical improvement, and his functional capacity was representative of what his limitations would look like going forward. *See* AR 24. This was entirely proper. *See Claypool v. Astrue*, 2010 WL 2696736, at *11-12 (N.D. Iowa 2010) (holding that an ALJ does not err by choosing not to discuss pre-surgery opinions and focusing instead on post-surgery opinions); *cf. Carmickle*, 533 F.3d at 1165.

### 5. Treating nurse practitioner Desiree Ang

Finally, Plaintiff argues the ALJ erred in weighing the opinion of treating nurse practitioner Desiree Ang. ECF No. 12 at 8-9.

The "specific and legitimate" standard articulated above only applies to evidence from "acceptable medical sources." *Molina*, 674 F.3d at 1111. These include licensed physicians, licensed psychologists, and various other specialists.

*See* 20 C.F.R. § 404.1502(a). "Other sources" for opinions—such as nurse practitioners, physician's assistants, therapists, teachers, social workers, chiropractors, and other nonmedical sources—are not entitled to the same deference as acceptable medical sources.[3] 20 C.F.R. §§ 404.1502(e), 404.1527(f); *Molina*, 674 F.3d at 1111; *Dale v. Colvin*, 823 F.3d 941, 943 (9th Cir. 2016). An ALJ may discount an "other source's" opinion by providing a "germane" reason for doing so. *Popa v. Berryhill*, 872 F.3d 901, 906 (9th Cir. 2017); *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

Nurse Ang provided pain management treatment to Plaintiff from August 2014 to March 2016. AR 506, 1138. Between April and July 2015, she completed monthly activity prescription forms for Plaintiff's open worker's compensation claim with the Washington State Department of Labor & Industries. AR 1022-23, 1031, 1037. In these forms, she opined that it was unlikely that Plaintiff would be able to return to his prior work as an automobile mechanic, and that he could only perform postural activities occasionally and manipulative activities seldomly. AR 1022-23, 1031, 1037. However, by January 2016 (after Plaintiff's neck surgery), Nurse Ang no longer indicated that Plaintiff was unable to work, and she also opined that he could perform most work activities either constantly or frequently.

---

[3] For claims filed on or after March 27, 2017, licensed nurse practitioners and physician assistants can qualify as acceptable medical sources in certain situations. *See* 20 C.F.R. § 404.1502(a)(7)-(8). Plaintiff filed his claim in 2015, so this does not apply here.

*See* AR 1125. In February 2016, Nurse Ang released Plaintiff to return to work full time at a light duty job. AR 1225.

The ALJ assigned partial weight to Nurse Ang's opinions, reasoning that (1) she only intended them to cover one month periods and did not intend for them to reflect Plaintiff's limitations over a long period of time, and (2) she provided her opinions "on check-the-box forms without narrative justification or rationale." AR 23-24.

With respect to the ALJ's second rationale, Plaintiff argues that "Nurse Ang expounded upon the restrictions given in the 'check-box form' through chart notes from each visit." ECF No. 12 at 9. This argument is well-taken—although Nurse Ang checked boxes on the activity prescription forms, each form was accompanied by a substantive chart note that provided examination findings and a narrative explaining Plaintiff's progress. *See* AR 1018-1045. Thus, the ALJ erred in partially discounting her opinion on the basis that it was given "on check-the-box forms without narrative justification or rationale." AR 24.

With respect to the ALJ's first rationale, Plaintiff argues that "Nurse Ang provided these 'one-month' assessments for several consecutive months, thus showing a longitudinal assessment of [his] limitations." ECF No. 12 at 9. While true, the only time period in which she believed Plaintiff was limited in his ability to work was from April to July 2015. AR 1022-23, 1031, 1037. Medical opinions

that assess only temporary limitations lasting less than 12 months are of little probative value. *See Carmickle*, 533 F.3d at 1165. Therefore, the ALJ was entitled to partially discount Nurse Ang's opinion on this basis. *See Romo v. Berryhill*, 2018 WL 3751981, at *9 (W.D. Wash. 2018) (holding that ALJ properly discounted chiropractor's opined limitations provided in several months of L&I activity prescription forms due to their temporary nature).

**C.      The ALJ did not Err in not Including Plaintiff's Headaches as a Severe Impairment at Step Two of the Sequential Evaluation Process**

At step two in the sequential evaluation, the ALJ must determine whether a claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). The claimant has the burden of establishing that he or she has a severe impairment by providing medical evidence. 20 C.F.R. § 404.1512. A diagnosis itself does not mean that an impairment is "severe." *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001). To be severe, an impairment must significantly limit a claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 404.1522(a); *Edlund*, 253 F.3d at 1159. When arguing on appeal that the ALJ failed to include a severe impairment at step two, a claimant cannot simply point "to a host of diagnoses scattered throughout the medical record." *Cindy F. v. Berryhill*, 367 F. Supp. 3d 1195, 1207 (D. Or. 2019). Rather, a claimant must specifically identify functional limitations that the ALJ failed to consider in the sequential analysis. *Id.*

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 19

1      Citing his various complaints of headaches scattered throughout the medical

2  record, Plaintiff argues that the ALJ failed to include headaches as one of his

3  severe impairments at step two of the sequential evaluation process.[4] ECF No. 12

4  at 13-15. However, the ALJ acknowledged at step two that Plaintiff suffered from

5  headaches but found that they were not an independent medical condition but

6  rather a symptom of his narcotic analgesic use disorder. AR 18-19. In making this

7  finding, the ALJ relied on the opinion of psychiatrist Michael Friedman, who

8  believed that Plaintiff's psychiatric symptomology was related to his chronic use of

9  narcotics. AR 18; *see* AR 1012. Dr. Friedman opined that Plaintiff's headaches

10  were "rebound headaches" stemming from his narcotics use. AR 1012. Dr.

11  Friedman recommended that treating these symptoms involved "tapering and

12  discontinuation of narcotics." AR 1012.

13      Plaintiff argues that his internist, Daniel Quiroz-Portella, M.D., diagnosed

14  him with muscle contraction headache syndrome. ECF No. 12 at 13. While true,

15  *see* AR 608, 612, 620, 624, the ALJ simply believed that Dr. Friedman's

16  explanation—that Plaintiff's headaches were a byproduct of his narcotic analgesic

17  use disorder—was more plausible. *See* AR 18-19. It is the ALJ's province to weigh

18

19      [4] The Court notes that Plaintiff's counsel submitted a prehearing brief in which he
   identified impairments that he believed the ALJ should find severe. *See* AR 311-12. Plaintiff's
20  counsel identified Plaintiff's cervical, lumbar, and left knee impairments, as well as his
   depression, anxiety, and somatic symptom disorders. AR 311. However, Plaintiff's counsel never
   asked the ALJ to consider Plaintiff's headaches as a severe impairment. *See* AR 311-12.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT** ~ 20

the persuasive value of the various medical opinions and absent some legal error—

which Plaintiff fails to identify here—it is not the Court's role to reassess those

determinations. *Thomas*, 278 F.3d at 954-59.

Moreover, "[b]eyond simply pointing to a host of [headache complaints]

scattered throughout the medical record, Plaintiff does not advance a single

functional limitation that the ALJ failed to consider in the sequential analysis."

*Cindy F.*, 367 F. Supp. 3d at 1207. Plaintiff correctly notes that Dr. Sawyer and the

state agency consultants based their opined limitations in part on his headaches and

migraines. ECF No. 12 at 13-14. The ALJ relied on their assessments—including

their belief that Plaintiff would have "headache-related concentration issues"—in

determining the residual functional capacity. AR 26; *see* AR 20-21. Plaintiff fails

to identify any functional limitations put forth by a medical provider (and not his

own testimony) that were not already accounted for.

**D.     The ALJ's Step Five Finding**

Plaintiff argues that the ALJ improperly found that there were a significant

number of jobs in the national economy that he could still perform. ECF No. 12 at

15-20. His central argument is that the ALJ's hypothetical questions for the

vocational expert did not account for all of his limitations. *Id.*

However, the hypothetical the ALJ posed to the vocational expert was

consistent with her findings relating to Plaintiff's residual functional capacity.

*Compare* AR 20-21, *with* AR 64-65. Plaintiff argues the ALJ failed to include the limitations provided by Nurse Ang,[5] Dr. Sawyer, Dr. Early, and the state agency consultants. ECF No. 12 at 17-19. However, the ALJ discounted Nurse Ang's, Dr. Early's, and Dr. Sawyer's opinions and incorporated the state agency consultants' opinions into the residual functional capacity. *See* AR 20-26. Plaintiff's argument here just restates his prior arguments that the ALJ improperly weighed the medical opinion evidence. Courts routinely reject this argument. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008); *Rollins*, 261 F.3d at 857. Because the ALJ included all of the limitations that she found to exist, and because her findings are supported by substantial evidence, the ALJ did not err in omitting the other limitations that Plaintiff claims, but failed to prove. *See Rollins*, 261 F.3d at 857.

The only medical provider who Plaintiff discusses with respect to this issue but was not already addressed is physical therapist Kirk Holle, whose opinion the ALJ assigned significant weight. *See* ECF No. 12 at 17; AR 24. Plaintiff emphasizes Mr. Holle's findings that he could not frequently lift from floor to waist and could not frequently carry. ECF No. 12 at 17. However, the ALJ acknowledged Mr. Holle's opinion that Plaintiff could only lift occasionally, *see*

---

[5] Notably, Plaintiff only cites Nurse Ang's opinions from *before* his neck surgery. ECF No. 12 at 17 (citing AR 1022-23, 1031, 1037). After his surgery, Nurse Ang released Plaintiff to return to work full time. AR 1225.

AR 24, and these more detailed findings that Plaintiff emphasizes are not otherwise inconsistent with the residual functional capacity. *See* AR 20-21.

Accordingly, the ALJ properly identified available jobs in the national economy that matched Plaintiff's abilities and therefore satisfied step five of the sequential evaluation process.

## VIII. Order

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and is free from legal error.

Accordingly, **IT IS ORDERED**:

1.  Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **DENIED.**

2.  Defendant's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED**.

3.  Judgment shall be entered in favor of Defendant and the file shall be **CLOSED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel, and close the file.

**DATED** this 24th day of February, 2020.

*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge